# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| RICHLAND/WILKIN JOINT POWERS AUTHORITY, | Civil No. 13-2262 (JRT/LIB) |
| Plaintiff, | |
| v. | |
| UNITED STATES ARMY CORPS OF ENGINEERS, JOHN MCHUGH, JO-ELLEN DARCY, and DAN KOPROWSKI, | **MEMORANDUM OPINION AND ORDER** |
| Defendants, | |
| v. | |
| FARGO-MOORHEAD FLOOD DIVERSION BOARD OF AUTHORITY, | |
| Intervenor Defendant. | |

Gerald W. Von Korff, **RINKE NOONAN**, P.O. Box 1497, St. Cloud, MN 56302, for plaintiff.

Carol Lee Draper, **UNITED STATES DEPARTMENT OF JUSTICE**, 601 D Street NW, Room 3106, Washington DC 20579; Friedrich A. P. Siekert, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendants.

Robert E. Cattanach and Michael R. Drysdale, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for intervenor defendant.

Jill S. Nguyen, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1800, St. Paul, MN 55101, for amicus curiae Minnesota Department of Natural Resources.

Matthew A. Sagsveen, Assistant Attorney General, **NORTH DAKOTA ATTORNEY GENERAL'S OFFICE**, 500 North Ninth Street, Bismarck, ND 58501, for amicus curiae State of North Dakota.

In a May 13, 2015 Order, the Court granted plaintiff Richland/Wilkin Joint Powers Authority's ("JPA") motion for a preliminary injunction.   Before the Court are the parties' briefs regarding the proper security amount in this case; the State of Minnesota's motion for leave to participate as amicus curiae with respect to the security issue; and defendant Fargo-Moorhead Flood Diversion Board of Authority's ("Authority") motion to stay the injunction pending appeal.   Because the security requirement is generally waived in public interest environmental litigation, the Court will waive the requirement. Additionally, because the Authority has not met its burden under the four factors the Court must consider when deciding whether to stay an injunction pending appeal, the Court will deny the Authority's motion to stay.

## I.    SECURITY

Federal Rule of Civil Procedure 65(c) states that the Court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."   Because the Authority requested an additional opportunity to make arguments with respect to the security ("security" or "bond") issue, the Court temporarily waived the security in its prior Order to give the parties time to brief the issue in detail.   *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, No. 13-2262, 2015 WL 2251481, at 24 n. 14 (D. Minn. May 13, 2015) (*Richland/Wilkin II*).

"The amount of the bond rests within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of that discretion." *Stockslager v. Carroll Elec. Co-op Corp.*, 528 F.2d 949, 951 (8th Cir. 1976).  Despite this significant discretion, the Eighth Circuit "will reverse [a district court's] order if it abuses that discretion due to some improper purpose, or otherwise fails to require an adequate bond or to make the necessary findings in support of its determinations." *Hill v. Xyquad, Inc.*, 939 F.2d 627, 632 (8th Cir. 1991).

The Authority seeks a bond in this case of at least $2,458,000.  (Authority Mem. of Law in Supp. of Inj. Bond ("Authority Bond Mem.") at 7-8, May 20, 2015, Docket No. 212.)  This amount stems from estimates of construction delay costs for the 2015 season, the potential loss of the 2016 construction season, and a reduction in property values in the City of Oxbow.  (Decl. of Bruce Spiller Regarding Prelim. Inj. Costs ¶¶ 3-8, May 20, 2015, Docket No. 215.)   In an amicus brief, the State of Minnesota ("Minnesota")[1] argues, however, that no bond or simply a nominal bond should be required, because this case is similar to cases arising under the National Environmental

---

[1] The Court will grant Minnesota's motion to appear as amicus curiae on the bond issue, (Minnesota Mot. for Leave to Participate as Amicus Curiae, May 20, 2015, Docket No. 202), which appears to be unopposed.  *See Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 38 F. Supp. 3d 1043, 1054-55 (D. Minn. 2014) (*Richland/Wilkin I*); *see also United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, No. 10-2076, 2012 WL 3065517, at *6 (E.D. Mo. July 27, 2012).

Policy Act ("NEPA"), in which the bond requirement has been waived.  The JPA argues that no bond should be required pursuant to a state statute, Minnesota Statute § 574.18.[2]

Overall, there are few exceptions to Rule 65(c)'s bond requirement.  *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988) ("While there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory.").  Indeed, there are few examples in this circuit of courts waiving the bond requirement.  *See Curtis 1000, Inc. v. Youngblade*, 878 F. Supp. 1224, 1278 (N.D. Iowa 1995) ("Almost without exception, however, courts in this circuit have required a bond before issuing a preliminary injunction."); *Masterman ex rel. Coakley v. Goodno*, No. 03-2939, 2003 WL 22283375, at *1 (D. Minn. Sept. 25, 2003).[3] Courts in this district have waived the bond requirement in cases in which the defendant did not object to requiring no bond, *Fantasysrus 2, L.L.C. v. City of East Grand Forks*, 881 F. Supp. 2d 1024, 1033 (D. Minn. 2012), and in which the defendant had not shown that any damages would result from the wrongful issuance of an injunction, *Bukaka, Inc. v. Cnty. of Benton*, 852 F. Supp. 807, 813 (D. Minn. 1993).  As the Authority correctly points out, this case is different than either *Fantasysrus 2* or *Bukaka*, because the Authority **does** seek a bond and has put forth evidence of damages that it will incur if the injunction was issued wrongly.

---

[2] The Court is not persuaded by the JPA's reference to Minnesota Statute § 574.18 and will decide this case on the other arguments raised by the various parties.

[3] *See also* Erin Connors Morton, Note, *Security for Interlocutory Injunctions Under Rule 65(c): Exceptions to the Rule Gone Awry*, 46 Hastings L.J. 1863, 1877 & n.94 (1995).

Irrespective of these general trends in the Eighth Circuit, however, Minnesota in its amicus brief correctly points out that a so-called "NEPA exception" exists to the bond requirement.  In cases asserting federal NEPA claims, courts "have usually not required a bond at all or a nominal bond of one dollar."  NEPA Law & Litig. § 4.53; 11A Fed. Prac. & Proc. Civ. § 2954 (3d ed.) ("Another instance in which there may be a conflict between the amount of security that defendant feels is adequate and the amount that plaintiff can afford arises in what might be called 'public interest' litigation.").  Courts have adopted this "NEPA exception" due to "the important public interest in the enforcement of NEPA, the congressional policy that private organizations are to cooperate in its enforcement, and the deterrence to litigation that would result if substantial bonds were required." NEPA Law & Litig. § 4.53 (footnotes omitted).

One oft-cited example of this trend is *Davis v. Mineta*, 302 F.3d 1104 (10th Cir. 2002).  In that case, the Tenth Circuit reversed a district court's decision not to grant a preliminary injunction under NEPA, enjoining construction of a highway project.  *Id.* at 1109-10, 1126.  In doing so, the court left to the district court the decision on whether to require a bond, but noted that "[o]rdinarily, where a party is seeking to vindicate the public interest served by NEPA, a minimal bond amount should be considered."  *Id.* at 1126.  The court noted that the case did not involve a public-interest environmental organization – the typical plaintiff in a NEPA case in which the bond requirement is waived – but nevertheless recommended against requiring a large bond.  *Id.*  The court in *Natural Resources Defense Council v. Morton*, 337 F. Supp. 167, 168-69 (D.D.C. 1971), reached a similar conclusion in a case involving an injunction that halted an offshore gas

and oil lease sale.  The court set bond at $100, even though the defendant federal agency asked for a bond of at least $750,000, and possibly $2.5 million.  *Id.*; *see also Landwatch v. Connaughton*, 905 F. Supp. 2d 1192, 1198 (D. Or. 2012) ("It is well established that in public interest environmental cases the plaintiff need not post bonds because of the potential chilling effect on litigation to protect the environment and the public interest.  Federal courts have consistently waived the bond requirement in public interest environmental litigation, or required only a nominal bond."); *San Luis Valley Ecosystem Council v. U.S. Fish & Wildlife Serv.*, 657 F. Supp. 2d 1233, 1247-48 (D. Colo. 2009) ("I conclude that the declarations establish that the imposition of substantial security would impede Plaintiff's access to judicial review and therefore will not require a bond."); *League of Wilderness Defenders-Blue Mountain Biodiversity Project v. Forsgren*, 184 F. Supp. 2d 1058, 1071 (D. Or. 2002) ("The bond in this public interest litigation is waived.").  *But see Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 459 (7th Cir. 2010) ("And we especially wish to emphasize our rejection of the rule proposed by [the plaintiff] that nonprofit entities should be exempt from having to post injunction bonds, or a slightly narrower rule that would pick and choose among them on the basis of likely contribution to the overall public welfare."); *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 297 F.R.D. 633, 634 (N.D. Ala. 2014).

The Eighth Circuit has not ruled explicitly on whether it adopts the NEPA exception to the Rule 65(c) bond requirement.  It has approved a $10,000 bond in a NEPA case, drawing on the district court's discretion to set the bond it deems appropriate.  *Stocklager*, 528 F.2d at 951.  In *Monarch Chemical Works, Inc. v. Exon*,

452 F. Supp. 493 (D. Neb. 1978), however, a decision affirmed by the Eighth Circuit, *Monarch Chem. Works, Inc. v. Thone*, 604 F.2d 1083 (8th Cir. 1979), the court explicitly stated that "private enforcement of environmental duties would be hindered if more than a nominal bond were required." *Monarch Chem. Works, Inc.*, 452 F. Supp. at 503. In *Monarch*, a private company sued the city of Omaha and government officials, seeking under NEPA to restrain the defendants from taking part of the plaintiff's property for construction of a correctional facility. *Id.* at 496. The court ultimately ordered a bond of $10,000, noting that the plaintiff company had the ability to pay, that the likelihood of a wrongful injunction was "slight," but also that "potential damage to the State is too great to dispense with a bond altogether." *Id.* at 503.

The Authority argues that this NEPA exception has not survived the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), because that decision concluded that a plaintiff seeking a preliminary injunction – even if a non-profit organization asserting environmental claims under NEPA – must still show that it is "likely to succeed on the merits." *Id.* at 20. The Court rejected the Ninth Circuit's "possibility" of irreparable harm standard, holding NEPA plaintiffs to the same standard as other plaintiffs seeking preliminary injunctions. *Id.* at 20-24. The Authority contends that *Winter* precludes any conclusion that plaintiffs in NEPA cases are entitled to special deference as to preliminary injunctions, even as to the bond requirement. But *Winter*'s holding is not as broad as the Authority contends. Indeed, district courts have applied the NEPA exception to the bond requirement after *Winter*. *See, e.g.*, *Landwatch*, 905 F. Supp. 2d at 1198.

The Authority also argues that the NEPA exception is inapplicable to this case, because the Court's preliminary injunction is based on the JPA's Minnesota Environmental Policy Act ("MEPA") claim, and not its NEPA claim.  The Authority claims that the JPA and the State of Minnesota "should not be allowed to cherry-pick NEPA jurisprudence where it favors their interests, while disavowing NEPA precedent when inconvenient."   (Authority Bond Mem. at n.1.)   This argument unrealistically attempts to limit the Court's analysis, however.  Simply because the Court or the parties recognize distinctions between NEPA and MEPA in some instances or contexts, does not mean the Court cannot analogize between them in others.  Because the overarching purpose behind both the statutes – mandating a certain process for environmental review, but not any specific substantive outcome – is the same, along with many of the specific provisions and requirements of the two statutory regimes, the Court can apply reasoning from one regime to the other.  *See Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169, 1171 (8th Cir. 1994) ("Procedures under MEPA are in large measure similar to, and coextensive with, those under NEPA.").

Indeed, because the regimes and their underlying purposes are quite similar, the Court finds that it is appropriate to apply the logic behind the NEPA exception to the bond requirement in the context of MEPA.  Both regimes mandate that certain projects undergo analysis to determine their impact on the environment, inform policymakers, and engage the public.  *Id.*; *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989).  Both statutory regimes serve the public's interest in informed, environmentally aware decision-making.  The importance of that role supports waiving or reducing the

bond requirement in Rule 65 in order to ensure that plaintiffs – especially those with limited resources – will still take action to enforce NEPA and MEPA and protect the environmental review process.  *See Landwatch*, 905 F. Supp. 2d at 1198 (noting that in public interest environmental cases, waiving the bond requirement helps mitigate the bond requirement's "potential chilling effect on litigation [that] protect[s] the environment and the public interest"); *see also Monarch Chem. Works, Inc.*, 452 F. Supp. at 503 ("[P]rivate enforcement of environmental duties would be hindered if more than a nominal bond were required.")

The Authority argues further that, even if the Court were to adopt the NEPA exception in general, the exception should not apply here for at least two reasons.  One is that the JPA is not a limited-resource environmental non-profit, but instead represents two counties that have taxing authority and substantial budgets.  Second, the Authority contends that the JPA could evaporate at any time and leave the Authority with no party against whom to seek damages for an improvidently granted injunction.  But, the Authority offers no support for the claim that the JPA's constituent members – rural counties in North Dakota and Minnesota – have substantial resources available.  Moreover, while most of the cases articulating the NEPA exception involve non-profit environmental advocacy organizations, the NEPA exception is rooted more in the desire to avoid discouraging litigation that protects the public interest, and not the nature of the plaintiff.  *See Davis*, 302 F.3d at 1126; *Landwatch*, 905 F. Supp. 2d at 1198.  Here, that public interest is equally strong and the Court will apply the NEPA exception and waive the bond requirement accordingly.

The Court is aware, of course, that this is not a case in which the defendant has acquiesced to waiving the bond.  Instead, the Authority has stated that it will incur significant financial damages as a result of the injunction and resulting delay in construction.  (*See, e.g.*, Spiller Decl.)  But the prospect of damages to a defendant due to an injunction does not necessarily outweigh the public interest at issue in cases employing the NEPA exception to the bond requirement.  Indeed, many NEPA and MEPA cases involve a plaintiff attempting to stop government action so that more environmental analysis may be completed; granting the plaintiffs' requests in those cases necessarily means increased costs for the defendant.  *See, e.g.*, *Davis*, 302 F.3d at 1109-10.  Finally, to the extent that the Authority claims that this case is not one to which the NEPA exception would normally apply because the harm alleged by the JPA is longer term than the harm alleged in other NEPA cases, *see Scherr v. Volpe*, 466 F.2d 1027, 1029 (7th Cir. 1972), the Court notes that other cases have indeed taken into account the longer term effects of a project, even if imminent construction would only have more minimal impacts, *see Landwatch*, 905 F. Supp. 2d at 1194, 1197 (discussing short **and significant long term** effects of the project).  In sum, the Court will waive Rule 65(c)'s bond requirement in this case.

## II.     MOTION TO STAY INJUNCTION

The Authority filed a notice of appeal as to the Court's preliminary injunction Order, (Notice of Appeal, May 19, 2015, Docket No. 196), and also filed a motion to stay that Order pending appeal.  (Authority's Mot. for Stay Pending Appeal, May 19, 2015,

Docket No. 197.)  Federal Rule of Civil Procedure 62(c) gives the Court the power, while an appeal is pending from an interlocutory order granting an injunction, to "suspend, modify, restore, or grant an injunction."  Federal Rule of Appellate Procedure 8(a)(1)(A) states that "[a] party must ordinarily move first in the district court for the following relief . . . a stay of the judgment or order of a district court pending appeal."   In considering a motion to stay an injunction pending appeal, the Court considers the following factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011) (internal quotation marks omitted).   The most important factor in the stay analysis "is the appellant's likelihood of success on the merits."   *Id.*   But the Court nevertheless considers the relative strength of all four factors, "balancing them all."   *Id.* (internal quotation marks omitted).   The party seeking a stay "must show that it will suffer irreparable injury" absent a stay; clear evidence of irreparable injury reduces the burden on the moving party to show "certainty of victory."   *Id.* (internal quotation marks omitted).   While granting a stay gives the appellate court time to make a well-reasoned and thorough decision, the Supreme Court has also noted that "[a] stay is an intrusion into the ordinary processes of administration and judicial review."   *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks omitted).   As a result, a stay "'is not a matter of right, even if irreparable

injury might otherwise result to the appellant.'"  *Id.* (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).

Given the similarity between the stay factors and the preliminary injunction factors, the Court has already considered in its prior Order many of the issues raised in the Authority's brief.  *Richland/Wilkin II*, 2015 WL 2251481, at *16-*24.  The Court concluded that those factors weigh in favor of granting the injunction.  *Id.* at *24.  Consequently, the Court will focus its analysis here on the new arguments raised by the Authority, in lieu of a comprehensive analysis of the four factors that would force the Court to restate its previous analysis.

### A.      Likelihood of Success on the Merits

### 1.      Factual Error as to MDNR's Stance on the OHB Ring Levee

The Authority argues it is likely to succeed on the merits of its appeal of the Court's prior Order due to a variety of alleged legal and factual errors in the Order.  The Authority's primary argument for a stay is that the Court's Order is based on "a factual misunderstanding of how the Minnesota Department of Natural Resources ("MDNR") has interpreted the potential impact of the planned 2015 construction of the Oxbow, Hickson, Bakke ("OHB") Ring Levee in North Dakota."  (Authority Mem. of Law in Supp. of Mot. for Stay of Prelim. Inj. Pending Appeal ("Authority Stay Mem.") at 1, May 19, 2015, Docket No. 198.)  Citing repeated communication from the MDNR, including a new May 4, 2015 letter, the Authority claims that the MDNR has conceded that current construction on the OHB ring levee – which is limited to the level required to

provide protection to the OHB communities at the 100-year level in addition to three feet of freeboard – does not prejudice its environmental review.  (Decl. of Darrell Vanyo, Ex. B ("May 4, 2015 MDNR Letter"), May 19, 2015, Docket No. 199 ("DNR also informed the Diversion Authority that flood mitigation projects to provide protection to the existing 100 year flood level plus 3 feet of freeboard did not fall within [the strictures of Minnesota law precluding construction prior to the completion of a state environmental impact statement ("EIS")].").)  As a result, the Authority contends this Court's ruling is in error.

The MDNR's brief in opposition to the motion to stay belies the Authority's argument, however, sharply disputing the Authority's characterization of the MDNR's position (and, consequently, the Authority's claim that this Court based its Order on a "factual misunderstanding").  (Amicus Curiae MDNR Mem. Regarding Mot. for Stay Pending Appeal ("MDNR Amicus Mem."), May 29, 2015, Docket No. 227.)  Indeed, the MDNR argues that while it could foreseeably acquiesce to a generic flood project built to the 100-year flood level plus three feet of freeboard, this OHB ring levee was designed as an integral part of the overarching Fargo-Moorhead flood diversion project ("diversion project" or "project") and that, even if the Authority is temporarily lowering the height of the construction, the Authority had not changed the overarching design or changed the width of the project.  (Decl. of Randall Doneen ¶¶ 4-12, June 6, 2015, Docket No. 230.) Given the MDNR's position, and the fact that it is ultimately the Court's determination, not the MDNR's, that controls as to whether the OHB ring levee has independent utility and consequently can proceed prior to the completion of MDNR environmental review,

the Court rejects the Authority's central argument that it is likely to succeed on the merits of its appeal because the preliminary injunction order was based on a factual error (i.e., that the OHB ring levee is indisputably an independent or unconnected project and is therefore in compliance with state law, even in the eyes of the MDNR).

### 2. Application of Minnesota Law and Whether the OHB Ring Levee is Unconnected

The Authority goes on to offer additional arguments for why Minnesota law would allow the project to be built if it is unconnected from the overarching project, and why the project is unconnected and independent. First, the Authority contends that "the Court erred in concluding that the proper application of the concept of 'connected action' under Minnesota law would not be relevant to the ability to commence construction." (Authority Stay Mem. at 9-10.) It cites various Minnesota regulations, *see, e.g.*, Minn. R. 4410.1700, subp. 9 ("Connected actions and phased actions shall be considered a single project for purposes of the determination of need for an EIS."); Minn. R. 4410.2000, subp. 4 ("Multiple projects and multiple stages of a single project that are connected actions or phased actions must be considered in total when determining the need for an EIS and in preparing the EIS."), all of which the Authority claims would allow an unconnected action – which is how it characterizes the OHB ring levee – to continue prior to the completion of the MDNR's environmental review. The Authority claims the Court erred when it concluded differences exist between NEPA and MEPA; the Authority argues the cited MEPA provisions are equivalent to NEPA's regulations.

But this argument still ignores the differences between NEPA's regulations in this context and MEPA's.  While Rule 4410.1700, subp. 9, clarifies that connected actions must be considered together when deciding whether an EIS is needed, 40 C.F.R. § 1506.1(c) goes farther, stating explicitly that work on a project must not commence unless the action in question "is justified independently of the program [being reviewed in the EIS]."  Thus, as the Court stated in *Richland/Wilkin II*, the Authority still has not cited a provision containing "the same caveat as NEPA under 40 C.F.R. § 1506.1(c)." 2015 WL 2251481, at *22.  In any event, as the MDNR points out, the Court also provided alternative support for its conclusion by determining that the OHB ring levee was not an independent or unconnected project.  *Id.*

Next, the Authority disputes the Court's determination that the OHB ring levee was connected to the overarching project, and was not independent.  Pointing to what it construes as a "serious factual error" in the Court's analysis, (Authority Stay Mem. at 10-11), the Authority claims that under Minnesota Rule 4410.0200, subp. 9c, a project is not connected, or is independent, if it is – objectively – justified by itself, irrespective of whether the State of North Dakota would fund the project independently.  Moreover, the Authority claims that the State of North Dakota did indeed intend to fund the project independently, because it did not tie the funding of the OHB ring levee to future federal appropriations.  (North Dakota Amicus Brief Regarding Mot. to Dismiss and Mot. for Prelim. Inj. at 3 ("While [the bill funding Fargo-Moorhead levees and the OHB ring levee] provides in part that construction of the majority of the F-M Project must await a

variety of federal agreements and approvals, this restriction **does not apply** to levee construction."), Mar. 25, 2015, Docket No. 188.)

With these arguments in mind, the Court re-affirms its conclusion – at the preliminary injunction stage – that the JPA is likely to succeed on its argument that the OHB ring levee is not independent or unconnected, such that it could continue under Minnesota law despite the fact that the MDNR's EIS has not yet been completed.  As the MDNR has pointed out, the OHB ring levee was designed as an integral part of the overarching flood project.  (Doneen Decl. ¶ 8.)  The Court will not read into MEPA a definition of connected and unconnected actions that is so broad that, in this case, it allows the Authority to set into motion a piece of a project – small, but still important – prior to the completion of required environmental review of that project.

### 3.      Remaining Arguments

The Authority also argues that it is likely to succeed on appeal because the Court's dormant commerce clause analysis is erroneous, relying in part again on the contention that the MDNR has concluded the Authority's current construction plans are compliant with MEPA.  For the reasons discussed above, the Court rejects that argument and will not otherwise revisit its dormant commerce clause analysis.  Similarly, the Authority rearticulates its arguments that the Court applied the wrong standard in considering the "likelihood of success on the merits" factor.  The Court disagrees.  Like the district court the Eighth Circuit affirmed *in Sierra Club v. United States Army Corps of Engineers*, 645 F.3d 978, 993-94 (8th Cir. 2011), the Court is aware of and cited the *Winter* test and

articulated a standard that other courts have used post-*Winter*, *see, e.g.*, *In re Medtronic, Inc. Derivative Litig.*, --- F. Supp. 3d ---, 2014 WL 7323402, at *5 (D. Minn. Dec. 22, 2014).

Similarly, the Court rejects the Authority's contention that the Court applied the incorrect irreparable harm standard.  While the Authority seizes on the term "sufficient risk," that argument myopically targets and misreads a stylistic phrase, while ignoring the fact that the Court articulated and applied the proper standard.  *See, e.g.*, *Richland/Wilkin II*, 2015 WL 2251481, at *23 (stating that the JPA had demonstrated "irreparable harm" "sufficiently"; in other words that the JPA had produced enough to meet the irreparable harm standard).

Finally, the Court also rejects the contention that the Authority is likely to succeed on appeal on the grounds that the JPA has not shown it will suffer irreparable harm.  The Authority too readily ignores the real and concrete threat of flooding – flooding that will occur in the plaintiff counties once the project is commenced and eventually completed. Moreover, in terms of the imminence portion of the irreparable harm analysis, the Authority ignores the relationship between the procedural injury alleged (i.e., starting construction prior to the completion of environmental review; setting off a bureaucratic steamroller) and specific and concrete environmental injuries.  Several cases demonstrate this relationship.  In *Committee of 100 on Federal City v. Foxx*, No. 14-1903, 2015 WL 1567902, at *6 (D.D.C. Apr. 7, 2015), for example, the court noted that irreparable harm is demonstrated by showing "procedural harm . . . combined with an aesthetic or other concrete injury."  The court then rejected the claim the plaintiff had shown concrete harm

by alleging that revitalization of a railroad tunnel would lead to more railroad accidents. *Id.* at *7. The court rejected this argument, however, not because the railroad accidents were not imminent, but because they were "largely speculative." *Id.* The court reached a similar conclusion regarding oil spills in *Sierra Club v. United States Army Corp of Engineers*, 990 F. Supp. 2d 9, 41 (D.D.C. 2013). Here, the JPA has done more than claim speculative dangers to county land. It has asserted a concrete threat of significant additional flooding due to the diversion project. Indeed, that flooding is a certainty because it is the **purpose** of the diversion project as designed. This concrete threat, combined with a procedural injury that will start the wheels moving, inexorably, toward completion of the project's current design, demonstrates irreparable harm at this stage of the proceedings. *See, e.g.*, *Colorado Wild, Inc. v. U.S. Forest Serv.*, 523 F. Supp. 2d 1213, 1220-21 (D. Colo. 2007).

In sum, the Court has considered the Authority's various new arguments about errors in the Court's prior Order and is not persuaded that the Authority is likely to succeed on the merits on appeal. To the extent the Authority claims the injunction is overbroad, the Court also rejects this argument. The Authority contends that the injunction should not enjoin construction beyond the level approved by the MDNR. But, as discussed above, the MDNR in its brief does not concede that any portion of the OHB ring levee can or should be built in compliance with MEPA, prior to the completion of the EIS. Moreover, as to the lack of a deadline for the MDNR in the injunction, the Court remains confident in the MDNR's ability to speedily conclude its remaining

environmental analysis and, as a result, will not revisit its conclusion that the injunction will be short-lived.

## B.    Remaining Factors

The Authority also argues that it will suffer irreparable harm if the injunction is not stayed, citing this Court's decision in *Richland/Wilkin I*, 38 F. Supp. 3d at 1060 n.9 ("The Diversion Authority has also likely demonstrated for the purposes of this stage in the proceedings that any delay in the project will cause irreparable harm because it could set the entire project back a year."). But what the Authority labels "irreconcilable positions," (Authority Stay Mem. at 23), are actually consistent. First, the Court did not expressly hold in its prior Order that delay of construction would result in irreparable harm. *See Richland/Wilkin I*, 38 F. Supp. 3d at 1060 n.9 ("Although the Court previously concluded that the four traditional factors are not a good fit for determining the propriety of entering a preliminary injunction in this case, the Court nevertheless would, applying those factors, **likely** reach the same determination that the parties should be enjoined from further proceeding in the Wilkin County action." (emphasis added)).

More importantly, even acknowledging the harm that the Authority will suffer due to the injunction, the Court weighed the competing harms in this case and found in favor of the JPA. At this stage, while the Authority has no doubt shown that it – and affected citizens – will incur costs due to the injunction, the Court notes that it still must balance the various factors and that a stay is not granted as a matter of right, even if the Authority shows it will incur irreparable harm. *Nken*, 556 U.S. at 427. Here, given the Court's

conclusion as to the Authority's likelihood of success on the merits, the Court concludes that the Authority has not demonstrated irreparable harm that outweighs the other factors for considering a motion to stay an injunction.  *See Brady*, 640 F.3d at 789.

Finally, the Court is not persuaded by the Authority's arguments as to the remaining two factors – the balance of the harms and the public interest.  As the Court previously stated, the public's interest in effective and thorough environmental review is significant and critically important to the success of major infrastructure projects.  This narrow injunction will protect that interest until the MDNR has completed its analysis.  Because the Authority has failed to meet its burden under the four stay of injunction factors, the Court will deny the Authority's motion.[4]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      The State of Minnesota's motion to appear as amicus curiae [Docket No. 202] is **GRANTED**.

---

[4] The JPA opposes the motion to stay by citing to MEPA provisions and regulations that bar construction while an EIS is being prepared, and that require a party to seek a variance if it hopes to continue construction.  Minn. Stat. § 116D.04; Minn. R. 4410.3100, subp. 4.  The JPA raises these provisions, and this argument, for the first time at this stage of the proceedings.  The Court is not persuaded by this argument because it did not base its injunction on these provisions.  Moreover, as the Authority notes, any variance under MEPA regulations would require a variance from the relevant governmental unit: in this case, the MDNR.  Minn. R. 4410.3100.  In this case, however, the MDNR has clarified that it supports delaying construction until the state EIS is complete.  Additionally, the MDNR does not have the power to vary from this Court's injunction.

2.      The security requirement of Federal Rule of Civil Procedure 65(c) is waived in this case.

3.      The Authority's motion to stay the Court's preliminary injunction order [Docket No. 197] is **DENIED**.


DATED:  June 24, 2015                          _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                                United States District Judge