**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| RICHLAND/WILKIN JOINT POWERS AUTHORITY, | Civil No. 13-2262 (JRT/LIB) |
| Plaintiff, | |
| and | |
| MINNESOTA DEPARTMENT OF NATURAL RESOURCES | |
| Intervenor-Plaintiff, | **ORDER ON DEFENDANTS' MOTION FOR RELIEF FROM INJUNCTION** |
| v. | |
| UNITED STATES ARMY CORPS OF ENGINEERS, ROBERT SPEER, ASSISTANT SECRETARY OF THE ARMY FOR CIVIL WORKS, and COL. SAM CALKINS, | |
| Defendants, | |
| and | |
| FARGO-MOORHEAD FLOOD DIVERSION BOARD OF AUTHORITY and CITY OF OXBOW, | |
| Intervenor-Defendants. | |

Gerald W. Von Korff, **RINKE NOONAN**, P.O. Box 1497, Saint Cloud, MN 56302, for plaintiff.

Colin Patrick O'Donovan and Philip Pulitzer, Assistant Attorneys General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 900, Saint Paul, MN 55101, for intervenor-plaintiff.

Devon Lehman McCune, **UNITED STATES DEPARTMENT OF JUSTICE**, 999 18th Street, South Terrace, Suite 370, Denver, CO 80202, for defendants.

Robert E. Cattanach and Michael R. Drysdale, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN  55402, for intervenor-defendant Fargo-Moorhead Flood Diversion Board of Authority.

Katrina A. Turman Lang, **TURMAN & LANG, LTD**, PO Box 110, Fargo, ND  58107, for intervenor-defendant City of Oxbow.

Defendant U.S. Army Corps of Engineers (the "Corps") and Intervenor-Defendants Fargo-Moorhead Flood Diversion Board of Authority ("Diversion Authority") move the Court to modify the preliminary injunction in this case.  Defendants ask the Court to allow construction of certain non-waterway aspects of a larger flood diversion project along the Red River between Minnesota and North Dakota.  The Court previously enjoined any construction in furtherance of the project, but has allowed requested construction on a case-by-case basis.  Because of the change in circumstances since the Court entered the injunction, and because the requested construction will occur in non-waterways in North Dakota, the Court will grant Defendants' Motions.

## BACKGROUND

The facts of this case are discussed at length in the Court's prior preliminary injunction and motion to dismiss order, and the Court incorporates them by reference.  *See generally Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Engineers*, 279 F. Supp. 3d 846 (D. Minn. 2017).  The Court will only recite facts relevant to the present motion.

On September 7, 2017, the Court ordered that Defendants "cease and desist all construction work on the Fargo–Moorhead Flood Risk Management Project . . . until

further order of the Court," granting Plaintiffs Richland/Wilkin Joint Powers Authority (the "JPA") and intervenor-plaintiffs Minnesota Department of Natural Resources' (the "DNR") respective preliminary injunction motions. *Richland/Wilkin*, 279 F. 3d at 882. In granting the preliminary injunction, the Court recognized the clear and undisputed need for flood protection along the Red River. However, the Court also recognized the substantial procedural and environmental harm that the DNR and the JPA might suffer if construction commenced before the DNR granted the project a Dam Safety and Public Waters Work Permit. While the injunction applied to any construction related to the project, the Court noted that it would "consider requests to allow certain construction to go forward" if those portions of construction would have no impact on Minnesota's waterways. *Id.* In addition, the Court encouraged "all parties to work to agree on a flood protection project that can serve the interests of both states and the affected communities." *Id.*

In response to the preliminary injunction, Defendants stepped away from the original project, now referred to as "Plan A," and began to formulate a project that was acceptable to both North Dakota and Minnesota. To facilitate this effort, North Dakota Governor Doug Burgum and then Minnesota Governor Mark Dayton created the Fargo-Moorhead Area Flood Diversion Task Force that was comprised of members from both states who represented a range of interests. (Decl. of Michael R. Drysdale ("Drysdale Decl.") ¶ 2, Ex. A (the "Permit") at 12-13, Mar. 11, 2019, Docket No. 619-1.)[1] The Task

---

[1]   *See also* https://fmdiversion.com/burgum-dayton-appoint-diversion-task-force-members-set-first-meeting/.

Force designed a project that was satisfactory to most interested parties and submitted it to the Diversion Authority for review. (*Id.*) Shortly thereafter, the Diversion Authority submitted the project—referred to as "Plan B"—to the DNR for permitting. (*Id.* at 13.)

The DNR, reviewing the Diversion Authority's application, determined that the Plan B project was sufficiently different from the original Plan A project to warrant supplemental environmental review. (*Id.*) Accordingly, the DNR conducted its statutorily required environmental review, and published a Supplemental Environmental Impact Statement ("SEIS") on November 13, 2018. (*Id.* at 14.) The DNR thereafter analyzed the SEIS and determined it was adequate and in accordance with Minnesota law. (*Id.*)

On December 27, 2018, then DNR Commissioner Tom Landwehr waived the need for a contested case hearing on the permit application, determined that the Plan B project "adequately protects the health, safety and welfare of the public, represents the minimal impact solution, and is reasonable and practical," and granted Plan B a Dam Safety and Public Waters Work Permit (the "Permit"). (*Id.* at 88-89.)

After Commissioner Landwehr granted the Plan B Permit, several local government units ("LGUs") filed demands for a contested case hearing in accordance with Minnesota law. (JPA Mem. in Supp. at 13-14, March. 11, 2019, Docket No. 613.) These LGUs seek to challenge the DNR's permit decision before an Administrative Law Judge ("ALJ"). While the JPA was procedurally unable to file a contested case demand, and is therefore

not a party to the contested case, the JPA represents two of the three LGUs able to file.  (*Id.* at 14.)  All parties anticipate that a contested case will commence soon.[2]

Defendants, despite the anticipated contested case hearing, now bring motions requesting that the Court modify the preliminary injunction to allow them to begin construction and preparation for construction on several isolated parts of the overall Plan B project, each of which would take place in North Dakota.  (Mot. to Modify, Mar. 11, 2019, Docket No. 615; Mot. to Alter/Amend/Correct, Mar. 11, 2019, Docket No. 623.)  Additionally, the Corps requests the Court's permission to conduct certain non-construction design and mitigation work in Minnesota and North Dakota.  (*Id.*)  In total, Defendants request permission to begin: (1) manufacturing components for the Diversion Inlet Structure and the Wild Rice River Structure; (2) site preparation and construction on both structures; (3) building the Western Tieback; (4) commencement of the Public-Private-Partnership; and (5) non-construction work in North Dakota and Minnesota such as geotechnical investigations, soil borings, and cone penetration testing.  (*See* Mem. in Supp. of Mot. to Modify at 13, Mar. 11, 2019, Docket No. 617; Mem. in Supp. of Mot to Alter/Amend/Correct at 11-13, Mar. 11, 2019, Docket No. 625.)

---

[2] Plaintiffs and Defendants disagree over the legal ramifications of the contested case hearing.  Defendants suggests that the Permit remains valid during the contested case.  Plaintiffs, on the other hand, argue that the contested case acts to nullify the Permit, and argue therefore that Defendants do not currently have a valid permit for Plan B.  After reviewing the arguments and the relevant Minnesota statutes, the Court is inclined to agree with the Plaintiffs.  Ultimately, however, both sides agree that the Court need not answer this question at this time because Defendants are not seeking to begin construction on the entire project.

Defendants argue that the present circumstances differ significantly from the circumstances that existed when the Court granted the preliminary injunction, and that limited relief from the injunction is therefore warranted. Defendants further contend that none of the proposed construction can or will affect Minnesota waters because it will all be conducted on dry land in North Dakota or will not entail construction at all. Further, Defendants state that if an ALJ eventually denies the Plan B Permit, any construction that is completed will simply be abandoned.

## DISCUSSION

### I.       STANDARD OF REVIEW

"Generally, a district court has the authority to modify its injunctive decrees where changed circumstances require modification so as to effectuate the purposes underlying the initial grant of relief." *Pro Edge L.P. v. Gue*, 411 F. Supp. 2d 1080, 1086–87 (N.D. Iowa 2006); *see also United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) (noting that it is "not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions."). "In modifying a preliminary injunction, a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason." *Movie Sys., Inc. v. MAD Minneapolis Audio Distribs.*, 717 F.2d 427, 430 (8th Cir. 1983).[3]  Thus, Defendants must show that circumstances have changed

---

[3] Several of the parties contend that the Court should reapply the *Dataphase* factors that were used to grant the preliminary injunction in the first place. *See Dataphase Sys., Inc. v. C L*

so as to make the modifications they request equitable.

## II.     THE PARTIES' ARGUMENTS

Defendants highlight several facts in arguing that this case has "changed significantly since this Court entered its Order."   (Mem. in Supp. of Mot. to Alter/Amend/Correct at 16.)  First and foremost is the fact that Plan B was granted a permit, albeit one that is subject to a contested case hearing not yet conducted.  When the Court originally granted the preliminary injunction, Defendants had not only failed to obtain a permit for Plan A, but the DNR had actively denied the permit application, finding that Plan A was inadequate.   Despite the DNR's denial, Defendants attempted to start construction using Plan A's design.  Now, although a contested case hearing is pending, Defendants are not attempting to construct a project that the DNR explicitly rejected.  To the contrary, the DNR advocates for Plan B.

Defendants argue that the Permit is significant not only because it is an acknowledgment that the DNR approves of Plan B, but also because it symbolizes the important compromise that occurred between Minnesota and North Dakota.  As noted,

---

*Sys., Inc*., 640 F.2d 109, 114 (8th Cir. 1981).  However, the *Dataphase* factors would only apply if the Court were considering whether to vacate or rescind the preliminary injunction. *See Paisley Park Enterprises, Inc. v. Boxill*, Civ. No. 17-1212 (WMW/TNL), 2018 WL 1427102, at *2 (D. Minn. Feb. 12, 2018) ("If the party opposing the injunction demonstrates that the injunction is no longer warranted based on the test under which it issued, the injunction may be **vacated**.") (emphasis added); *see also Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994) (analyzing a district court's decision to **rescind** a preliminary injunction by using the *Dataphase* factors).  Although Defendants at times suggest they are seeking a rescission, they ultimately ask only for a modification, and thus the Court will employ the *Movie Systems* changed circumstances test.

Plan B is the result of an interstate task force that collaborated in a significant way to prepare a plan acceptable to both states and most local interests.  The DNR, Corps, and Diversion Authority all, in some way, acknowledge that they acted on the Court's prior direction to the parties to work together and, as a result, "the injunction has achieved its goal."  (Mem. in Supp. of Mot. to Modify at 15.)

Additionally, Defendants point out that the Court granted the preliminary injunction in part because the DNR could have suffered significant procedural and environmental injury if Plan A construction began.  The procedural injury that concerned the Court came from the idea that "once the project begins, it creates the risk of a 'steam roller' effect preventing the DNR from properly regulating the Project." *Richland/Wilkin*, 279 F. Supp. 3d at 879.  The environmental injury came from Plan A's expected effect on Minnesota waters, and that "any construction of a dam on the Red River will have an environmental effect on Minnesota." *Id.*

Now, however, Defendants argue that the DNR will not suffer any injury as a result of the requested construction.  Defendants point out that they are only requesting permission to start certain non-waterway construction in North Dakota.  They argue that the requested construction cannot affect Minnesota waters because the construction will not alter any rivers that flow into Minnesota.  They further argue that any procedural harm to Minnesota is drastically reduced or eliminated completely.  First, they point out that the DNR explicitly approved Plan B after significant environmental research and the DNR permitting process.  Additionally, Defendants state that—even if the Permit is ultimately denied—Minnesota would not suffer a procedural injury because the Defendants will

simply abandon the completed construction in North Dakota.  In essence, Defendants argue that they have specifically tailored their requested construction so as to avoid the potential harms underlying the Court's preliminary injunction.

The DNR largely agrees with Defendants.  It too recognizes the significant factual differences now compared to when it requested the preliminary injunction.  It acknowledges that, in granting the Plan B permit, the DNR believes that the project, as proposed, adequately protects the public and itself from the harms that the Court previously considered.  Like Defendants, it also highlights the significant work done by the interstate task force and the fact that the task force was formed in direct response to the Court's injunction.  The DNR, therefore, supports the injunction modification, with the caveat that the Court require Defendants to begin construction in strict accordance with the Permit.  Only if Defendants are required to comply with the Permit, the DNR argues, can the DNR's interests be protected.

The JPA, for its part, makes an overarching argument against any modification to the injunction.  However, the JPA does not present any arguments as to the specific requests brought by Defendants or how the limited North Dakota construction could cause it harm.  Instead, the JPA's argument that any modification is improper focuses solely on the pending contested case hearing, the fact that it believes the contested case nullifies the Permit, and the fact that an ALJ may ultimately overturn the Plan B Permit.

## III.   MODIFICATION

After reviewing the parties' arguments and the preliminary injunction itself, the Court is persuaded that a modification is appropriate.

The preliminary injunction was entered in large part to stop Defendants from beginning construction on a project that would irreparably harm the JPA and the DNR, and which the JPA and the DNR strongly opposed.  However, as noted above, while the DNR opposed Plan A, it fully supports Plan B and continues to suggest that it is a permittable project.  Further, the DNR conducted an extensive environmental review and determined that Plan B adequately protects Minnesota's environmental interests.  Thus, as far as the DNR is concerned, all of its procedural interests have been protected and none of its environmental interests will be harmed by the construction requested.  The DNR therefore supports a modification.

The JPA, on the other hand, continues to oppose any modification to the preliminary injunction.  However, it has presented no arguments as to the **specific** requests at issue here.  The Court understands the JPA's continued opposition to the Plan B project as a whole and its belief that an alternative plan should be selected.  But the Court is not considering whether to allow the entire project to move forward, or whether the Plan B project will ultimately be selected.  Indeed, the Court is in no position to answer the latter.  Instead, the Court is considering whether it remains equitable to enjoin Defendants from beginning construction of certain non-waterway aspects of the larger project.  Because the requested construction will not affect Minnesota waters and will be carried out in North Dakota, the DNR supports the modification, and there is no clear harm to the JPA, the Court finds that is not equitable to do so.

The Court, then, must decide how specifically to modify the injunction.  The DNR urges the Court to allow the requested construction but to require the Corps and the

Diversion Authority to comply with the granted Plan B Permit.  The DNR suggests that its procedural and environmental interests can only protected if Defendants are required to comply with the conditions of the Permit.

The Diversion Authority takes no issue with the DNR's request, and states that it intends to comply with the Permit whether the Court mandates compliance or not.  The Corps, on the other hand, disagrees with the DNR.  The Corps argues that the Court lacks jurisdiction to order it to comply with the Permit, that it is not a proper permittee, and that it has sovereign immunity over state permitting requirements.  Instead, the Corps clarifies its role as assisting the Diversion Authority, and states "[a]s with any project, the Corps supports non-Federal sponsors in their compliance with any lawful permit conditions and will continue to work cooperatively with the DNR and other stakeholders."  (Reply at 3, Mar. 22, 2019, Docket No. 640.)  In essence, the Corps argues that while it is not subject to the Permit, it intends to ensure the Diversion Authority's compliance.

The Court appreciates the delicate nature of the Corps' position, as well as the DNR's desire to ensure that only the project it permitted is constructed.  However, the Court does not currently need to answer the significant legal questions presented by the Corps.  Instead, given the representations made at the hearing on the present Motions by Defendants about their respective roles and intentions, the Court expects that the Permit conditions will be fully complied with.  Moreover, the Court has already noted the particular roles that the Diversion Authority and Corps must take in ensuring compliance with the Permit.  In the preliminary injunction order, the Court stated that "the Corps has an independent mandate to monitor and audit the Diversion Authority as it carries out the

Project to ensure compliance with section 2232," which requires the Diversion Authority to obtain and follow all necessary state permits. *Richland/Wilkin*, 279 F. Supp. at 866. Accordingly, the Court will grant Defendants' Motions and allow the requested construction.

## CONCLUSION

The Court's preliminary injunction was put in place in part to ensure that Defendants complied with all of their legal responsibilities before carrying out construction of the flood diversion project. Accordingly, Defendants, instead of pressing forward with a project rejected by Minnesota, worked with Minnesota to establish a path forward that both Minnesota and North Dakota found acceptable. The Court appreciates the leadership by the Governers and the substantial work accomplished by the Governor's Task Force and the compromises made by both sides.

The injunction was also put in place to stop Defendants from irreparably harming Minnesota and the JPA by beginning construction on aspects of the project which would impact Minnesota waters but could not be reversed or retroactively influenced by the DNR. For that reason, the Court noted in the preliminary injunction that it would consider relieving Defendants from the injunction for construction that would have no impact on Minnesota waterways.

In the present Motions, Defendants have shown that they have satisfied the Court's concerns about complying with their legal responsibilities, and have presented construction requests that are tailored to restrict any impact on Minnesota. The Court believes it equitable to allow the requested construction.

However, though the Court will grant Defendants' Motions and modify the injunction, the Court notes that it retains jurisdiction over the preliminary injunction. Accordingly, should the circumstances change once again, or should Defendants overstep the relief granted here, the Court will entertain any future motions by the DNR or the JPA which seek to reinstate the preliminary injunction in its entirety or to enjoin specific aspects of the project.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Diversion Authority's Motion to Modify or Dissolve the Preliminary Injunction [Docket No. 615] is **GRANTED**.

2. The Corps' Motion to Alter/Amend/Correct [Docket No. 623] is **GRANTED**.

3. The Court modifies the September 7, 2017 preliminary injunction [Docket No. 530] to allow Defendants to:

   a. Manufacture components and begin construction of the Diversion Inlet Structure;

   b. Manufacture components and begin construction of the Wild Rice River Structure;

   c. Commence the Public Private Partnership process for the Diversion Channel and Associated Infrastructure element of the Plan B Project in

North Dakota.

    d.  Begin construction of the Western Tieback; and

    e.  Undertake the requested non-construction design and mitigation work in North Dakota and Minnesota.

4.  If any party or other person believes that the Permit or any condition thereof is not being complied with, notice of such alleged non-compliance shall be made to the DNR, or the DNR may assert a circumstance of non-compliance on its own initiative.  If the DNR determines that some action or inaction does not comply with the Permit, it shall notify the Diversion Authority and provide a reasonable opportunity to bring the Project into compliance.  If the alleged non-compliance is not remedied to the DNR's satisfaction, the DNR may apply to this Court for such relief as may be reasonable and necessary under the circumstances.


DATED:  April 8, 2019
at Minneapolis, Minnesota.

                           _____
                                 JOHN R. TUNHEIM
                                   Chief Judge
                      United States District Court